IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-273 (TSE/TRJ) |
| ) | |
| $60,753 IN FUNDS SEIZED FROM ) | |
| SUNTRUST BANK ACCOUNT NO. ) | |
| ENDING IN 5635, HELD IN NAME ) | |
| LLOYD A. SAMUEL, III, ) | |
| ) | |
| Defendant. ) | |

F I L E D
NOV 18 2013
CLERK, US DISTRICT COURT
ALEXANDRIA, VA

## REPORT AND RECOMMENDATION

Presently before the court is a Motion For Entry of a Default Judgment and an Order of Forfeiture (no. 13) filed by plaintiff, the United States of America (hereinafter "government"), against the defendant property, which is $60,753 in funds seized from SunTrust Bank account no. ending in 5635 held in the name of Lloyd A. Samuel, III (hereinafter "defendant funds"). On March 1, 2013, the government commenced this civil forfeiture action by filing a verified complaint *in rem* for forfeiture (no. 1) alleging that defendant funds should be forfeited pursuant to 31 U.S.C § 5317(a), as property traceable to structuring in order to evade currency reporting requirements of 31 U.S.C. §§ 5313 and 5324. On June 7, 2013, the government filed an amended verified complaint ( hereinafter "complaint"), adding information that Lloyd A. Samuel, III, disclaimed ownership of defendant funds and that all funds in the account belong to Nmadi Anya aka Andy Anya (hereinafter "Anya") (no. 5).

On or about July 5, 2012, defendant funds were seized pursuant to a federal civil seizure

warrant issued by this court.[1] The government filed an Amended Application for a Warrant of Arrest *In Rem* (no. 8) and subsequently, the Clerk issued an arrest warrant *in rem* for the arrest of the defendant property on August 28, 2013 (no. 9).[2] Pursuant to Supplemental Rule G(3)(b) & (c), a warrant of arrest *in rem* was duly executed on defendant funds by the United States Marshals Service and a certificate of service with an executed warrant for arrest *in rem* was filed on September 18, 2013 (no. 10). Pl. Req. for Def. Judgment ¶ 4.

The government published a notice of civil forfeiture for thirty consecutive days on the official government internet site, www.forfeiture.gov, beginning on June 8, 2013, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Supplemental Rules") (no. 7).[3] Proof of publication was filed on August 23, 2013. *Id.* Since Mr. Samuel disclaimed any ownership interest in defendant funds and stipulated that all of the funds in the account belonged to Andy Anya, the government did not send a written notice of civil forfeiture to Mr. Samuel. No. 11, Disclaimer of Ownership of Property, Affidavit pg. 5.[4] On June 7, 2013, a written notice of civil forfeiture with a copy of the amended verified complaint was sent to Anya via U.S. Postal Service certified mail and by regular U.S. Postal Service mail. No. 11, Affidavit ¶ 9. Both mailings were respectively returned marked, "Don't Live Here No More. Moved" and "Return to Sender. Unable to Forward." *Id.* No one has filed a claim or response to the complaint or otherwise appeared in

---

[1] *See* 1:12-sw-475. *See also* Pl.'s Req. for Def. Judgment and Order of Forfeiture, no. at ¶ 1.
[2] A Notice of Correction was filed on 8/27/2013 modifying the initial Warrant for Arrest *In Rem* (no. 3) and Application for Warrant of Arrest (no. 2) in order to correctly reflect the name of the warrant and application listed as the holder of the account from which the funds were seized. *See* Amended Application and Warrant for Arrest, No. 8 and No. 9, respectively.
[3] Notice of this civil forfeiture action is evidenced by the Declaration of Publication by Lynn Balcar, Esq./FCA with an exhibit attached thereto of the Notice of Forfeiture Action. *See* Affidavit, no. 7.
[4] No. 11, Karen L. Taylor's, Assistant United States Attorney, Affidavit In Support of Request for Entry of Default. (hereinafter "No. 11, Affidavit").

2

this matter and the time to do so has expired.[5] No. 11, Affidavit ¶11.

Upon consideration of the record, the magistrate judge recommends default judgment and an order of forfeiture be entered in plaintiff's favor against defendant funds, for the reasons set forth more fully below.

## Jurisdiction and Venue

This court has original jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345, and over this action *in rem* for forfeiture under 28 U.S.C. § 1355(a). Also, the court has jurisdiction over this action pursuant to 31 U.S.C. § 5317(c)(2), the applicable federal civil forfeiture statute. Pursuant to 28 U.S.C. § 1395(b), this court has *in rem* jurisdiction over defendant funds which were found within the Eastern District of Virginia. Moreover, the court has jurisdiction over defendant funds because an arrest warrant *in rem* was executed upon defendant funds pursuant 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(b).[6]

Venue is proper before this Court pursuant to 28 U.S.C. § 1395(b), as defendant funds are located within this District.

## Standard

Federal Rule of Civil Procedure 55 permits the court to grant a motion for default judgment where the well-pled allegations of the complaint establish plaintiff's entitlement to relief, and where a defendant has failed to pled or defend as provided by and within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By defaulting, a defendant admits plaintiff's well-pled

---

[5] Pursuant to Supplemental Rule G(5)(a)(ii)(A) and (B) and (b), any claimant to the defendant funds is required to file a claim, (A) by the time stated in a direct notice sent under Rule G(4)(b) and (B) if notice was published but direct notice was not sent to the claimant or the claimant's attorney, no later than 30 days after final publication of a newspaper notice, or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site. A claimant must serve and file an answer to complaint shall within 21 days after filing of a claim. *See* no. 11, Affidavit ¶ 10; no. 7, Declaration at pgs. 2-3.
[6] *See.* No.10.

allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts).

### Factual Background

This is a civil forfeiture action against $60,753 seized from SunTrust Bank account number ending in 5635, held in the name of Lloyd A. Samuel III. Compl. ¶ 2. Defendant funds were seized by the Federal Bureau of Investigation pursuant to the execution of a federal seizure warrant issued by this court.[7] *Id.* Defendant funds are currently in the custody of the United States Marshals Service in Richmond, Virginia. *Id.* The facts giving rise to this action are set forth in detail in the well-pled complaint as follows:

During the period of April 2008 through May 2011, Anya engaged in a scheme to evade bank reporting regulations. Compl. Pg. 3. As part of this scheme, Anya structured financial transactions by breaking up currency deposits into smaller amounts in order to avoid triggering statutory reporting requirements. *Id.* In order to effectuate this scheme, Anya recruited two individuals, See Lee Lim and Lloyd Samuel, to set up separate bank accounts held in their respective names but for Anya's personal benefit. Compl. ¶¶ 7,14

On April 28, 2008, See Lee Lim opened a BB&T checking account ending in 0184 (hereinafter "BB&T account") at a Virginia bank branch at the request of Anya, her then boyfriend. Compl. ¶ 7. Lim was the sole signatory on the account. *Id.* During the period of April 28, 2008 through January 21, 2009, Anya personally made cash and check deposits into

---

[7] 1:12-cv-475.

4

this account. Compl. ¶ 8. The bank records for the BB&T account for the dates December 5, 2008 through January 21, 2009 show that except for a single cash deposit of $17,000 made on December 5, all other cash deposits were deposited in amounts less than but near $10,000 and were made on consecutive or nearly consecutive banking days. Compl. ¶ 16.

In accordance with applicable statutes and regulations, financial institutions are required to report cash transactions that exceed $10,000 to the United States Treasury on a form known as Currency Transaction Report (CTR).[8] Compl. ¶ 17. Four days after the $17,000 cash deposit made on December 5, 2008 which triggered a CTR filing, Anya began a pattern of structuring cash deposits into the BB&T account in order to evade bank reporting requirements. Mr. Anya was able to evade the bank reporting requirements, by structuring his cash deposits into amounts between $8,000 and $9,000 during the period of December 8, 2010 to January 21, 2009.[9] *Id.*

In addition to depositing cash funds into the BB&T account, Anya would accompany Lim to the bank to withdraw funds in the amount specified by him several times a month. Compl. ¶ 8. In September 2009, at the direction of Anya, Lim withdrew the balance of funds in the BB&T account. Compl. ¶ 10. On or about September 22, 2009, Lim delivered to her attorney the balance of funds via a $68,035.09 BB&T cashier's check made payable to Anya.

---

[8] *See* 31 C.F.R. §1010.311.
[9] *See* Compl. ¶ 16. A review of the bank records for BB&T account no. ending in 0184 during the period of December 5, 2008 through January 21, 2009 reflect the following cash deposits made in northern Virginia and Maryland BB&T branch locations:

| Date | Cash Deposits |
|---|---|
| 12/05/08 | $17,000 |
| 12/08/08 | $9,000 |
| 12/09/08 | $9,000 |
| 12/10/08 | $8,000 |
| 12/12/08 | $8,000 |
| 12/13/08 | $9,000 |
| 12/15/08 | $8,000 |
| 12/22/08 | $9,000 |
| 01/16/09 | $9,000 |
| 01/17/09 | $9,000 |
| 01/21/09 | $8,000 |

Compl. ¶ 11. Anya signed a receipt for the $68,035.09 cashier's check and thereafter, Lim closed this BB&T account. Compl. ¶¶ 11, 12.

In March 2010, Anya asked Lloyd A. Samuel, III, an employee of SunTrust Bank, to open a SunTrust Bank account in Samuel's name solely for Anya's use and in exchange, Samuel would receive monetary payments from Anya. Compl. ¶ 13. On or about March 31, 2010, Samuel opened the SunTrust Bank account number ending in 5635 (hereinafter "SunTrust account") in his name and was the sole signatory. Compl. ¶ 14. Samuel deposited the $68,035.09 BB &T cashier's check made payable to Anya from the BB&T account number ending in 0184 into the SunTrust Bank account number ending in 5635 on or about May 14, 2010. Compl. ¶ 15.

On July 5, 2012, defendant funds were seized from SunTrust Bank account no. ending in 5635 pursuant to a federal seizure warrant. *See* No. 11, Affidavit in Support of Req. For Entry of Def. Judgment ¶ 3. On May 19, 2011, Samuel signed a United States Department of Justice Disclaimer of Ownership of Property[10] wherein he disclaimed any ownership of the SunTrust account and stipulated that all of the account funds belonged to Andy Anya. Compl. ¶ 20. The government now seeks an order from this court enforcing the forfeiture of defendant funds, $60,753 in funds seized from SunTrust Bank account ending in No. 5635.

## Discussion and Findings

The magistrate judge finds that the government has alleged sufficient facts to support a finding that it is entitled to default judgment in its favor and an entry of a final forfeiture judgment to vest in the government all right, title, and interest in defendant funds. Based on the well-pled complaint and documents in support thereto, the magistrate judge makes the following

---

[10] *See* Affidavit in Support of Req. For Entry of Def. Judgment. Attachment #1 (Disclaimer of Ownership of Property Form).

findings:

First, the magistrate judge finds that defendant funds were property involved in violation of 31 U.S.C. § 5324, and therefore, is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2). Pursuant to 31 U.S.C. § 5317(c)(2), "[a]ny property involved in a violation of 31 U.S.C. §§ 5313 or 5324 [structuring to evade currency reporting requirements], or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States ...." Plaintiff has alleged sufficient facts demonstrating that defendant funds were part of Anya's bank reporting evasion scheme conducted in violation of 31 U.S.C. §5324. Under 31 U.S.C. §5324(a)(1), it is a felony for a person to cause or attempt to cause a financial institution to fail to file a CTR report and it is a felony under 31 U.S.C. §5324(a)(3) to structure or attempt to structure, any transaction with one or more domestic financial institutions in amounts below the CTR threshold of $10,000. After reviewing the well-pled facts in plaintiff's complaint and the applicable law, the magistrate judge finds that Anya structured his currency deposits in such a manner as to evade bank reporting requirements in contravention of 31 U.S.C. § 5324.

As referenced above and set forth in the complaint, the bank reporting evasion scheme arose after Anya recruited Lim in April 2008 to open up a SunTrust account in her name but for Anya's sole benefit. For several months, Anya deposited money into this account and had money withdrawn at his direction. On December 5, 2008, Anya made a cash deposit of $17,000, an amount triggering reporting requirements. Under applicable statutes and regulations, if a cash transaction exceeds $10,000, the financial institution is required to report said transaction to the United States Treasury in a Currency Transaction Report (CTR).[11] It is standard banking

---

[11] "Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of

7

practice that whenever a cash deposit exceeds $10,000, the bank teller would advise the customer that he or she is filling out a CTR form. Compl. ¶ 18. Moreover, under the governing regulations, the financial institution is required to verify and record the name and address of the individual presenting a transaction.[12] The magistrate judge finds that after the $17,000 cash deposit was made on December 5, 2008, Anya presumably became abreast of the reporting requirement. Thereafter, Anya purposefully structured his cash deposits into the BB&T account in amounts less than but close to $10,000 on nearly consecutive days in order to avoid currency reporting requirements. With the assistance of Mr. Samuel who set up a SunTrust bank account in his name but on Anya's behalf, Anya was able to transfer the balance of the BB&T account, $68,035.09, into the SunTrust account ending in 5635. Based on this sequence of events set forth in the complaint, the magistrate judge finds that the $60,753 in funds seized from the SunTrust account ending in 5635 are directly traceable to Anya's illegal structuring of cash fund deposits.

Second, the magistrate judge finds that because defendant funds were traceable to Anya's structuring scheme in violation of 31 U.S.C. § 5324, the government lawfully seized defendant funds on or about July 5, 2012[13] pursuant to a federal seizure warrant in accordance with 31 U.S.C. § 5317(c)(2). A warrant of arrest *in rem* was duly executed on defendant funds by the United States Marshals Service who are in custody of the funds, pursuant to Supplemental Rule G(3)(b)&(c), which provide the process for forfeitures *in rem* arising from federal statute.

Third, the magistrate judge finds that the government provided due notice to all interested

---

more than $10,000, except as otherwise provided in this section." 31 C.F.R. §1010.311.
[12] *See* 31 C.F.R. § 1010.312 ("Before concluding any transaction with respect to which a report is required under ... this chapter, a financial institution shall verify and record the name and address of the individual presenting a transaction, as well as record the identity, account number, and the social security or taxpayer identification number, if any, of any person or entity on whose behalf such transaction is to be effected."
[13] 1:12-SW-475.

parties in this forfeiture action which satisfied both constitutional and statutory requirements. The Fifth Amendment prohibits governmental deprivation of property without "due process of law." U.S. Const. amend. V. Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492 (1993). Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings. Supplemental Rule G(4)(a)(iv)(C) provides that in lieu of newspaper publication, the government may publish notice "by posting notice on an official internet government forfeiture site for at least 30 consecutive days." In addition, Supplemental Rule G(4)(b) requires that direct notice be given to known potential claimants. Here, the government provided proper notice to Anya and any other potential interested party. The government accomplished notice by publication of the Notice of Civil Forfeiture through its website, www.forfeiture.gov, for 30 consecutive days as averred by attorney Lynn Balcar's Declaration of Publication (no. 7). Since Lloyd Samuel III, the named SunTrust account holder, disclaimed any ownership interest in the defendant funds, no written notice of civil forfeiture needed to be provided to him.[14] Moreover, the government provided direct notice to Anya by mailing to him a written notice of this civil forfeiture and copy of the amended verified complaint via United States Postal Service certified mail and regular mail.

Pursuant to Supplemental Rule G(5)(a) & (b), any claimant to the defendant funds is required to file a claim no later than 30 days after final publication of a newspaper notice or no later than 60 days after the first day of publication on an official internet government forfeiture site, and shall serve an answer within 21 days after filing of a claim. The failure to comply with procedural requirements for opposing the forfeiture precludes a person from establishing

---

[14] *See* Affidavit in Support of Req. For Entry of Def. Judgment. Attachment #1 (Disclaimer of Ownership of Property Form).

standing as a party to a forfeiture action. *See United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 665 (3d Cir. 2007); *United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998). To date, no person or entity has filed a claim or answer to this complaint for forfeiture and the time to do so has expired.

Finding that no person has timely responded to this civil forfeiture action and for the reasons stated above, the magistrate judge concludes that default judgment is proper and a final forfeiture judgment is in order for the government.

### Recommendation

The magistrate judge recommends that default judgment be entered in favor of the government, and an Order for Forfeiture be entered thereby vesting in the plaintiff all right, title, and interest in defendant funds, $60,753 in funds seized from SunTrust Bank account no. ending in 5635, held in the name Lloyd A. Samuel, III.

### Notice

By means of the court's electronic filing system, the parties are notified as follows. Within fourteen (14) days of service of this report and recommendation, any party may file written objections to this report and recommendation with the Court and serve a copy on all parties. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/  
_____  
Thomas Rawles Jones, Jr.  
United States Magistrate Judge

November 18, 2013  
Alexandria, Virginia